IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| DEWITT WEARY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 19-CV-0038-RJD |
| | ) |
| STATE OF ILLINOIS, DEPARTMENT | ) |
| OF TRANSPORTATION and CLARK | ) |
| KAERICHER, in his individual capacity, | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff has filed a 3-count Second Amended Complaint, alleging Defendants violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000(e), *et seq*., the Age Discrimination in Employment Act of 1967 (ADEA), and Section 1983 of the 1870 Civil Rights Act, 42 U.S.C. § 1983. In Count I, Plaintiff claims race discrimination and retaliation against Defendant IDOT in violation of Title VII, alleging IDOT denied him equal terms, conditions, benefits or privileges of employment because of his race and/or retaliated against him for reporting discrimination by paying him a discriminatorily suppressed salary, failing to promote him and terminating his employment. (Doc. 20, ¶ 38). In Count II, Plaintiff claims age discrimination and retaliation against IDOT under the ADEA, alleging IDOT denied him equal terms, conditions, benefits, or privileges of employment because of his age and/or retaliated against Plaintiff for reporting age discrimination by paying him a discriminatorily suppressed salary, failing to promote him, and terminating his employment. (Doc. 20, ¶ 44). In Count III, Plaintiff claims Defendant Kaericher unlawfully deprived his federally protected rights under the Equal Protection Clause of the Fourteenth Amendment (brought pursuant to § 1983) because of his age, race or color, and/or

protective activity, while acting under color of state law, by paying him a discriminatorily suppressed salary, failing to promote him, and terminating his employment. (Doc. 20, ¶ 51).

Defendants now move for summary judgment because Plaintiff has not presented sufficient evidence to sustain his claim of race discrimination in Count I against IDOT or his claim for age discrimination against IDOT in Count II. Further, Plaintiff has not presented sufficient evidence to support his claims of age and race discrimination against Defendant Kaericher in Count III. Also, Kaericher is entitled to qualified immunity.

## UNDISPUTED MATERIAL FACTS

1. Plaintiff was born August 16, 1968, and is a black male who has a bachelor's degree in industrial technology. (Ex. 1, Weary Dep. 14:15-16, 16:1-3; Doc. 20, ¶ 2).

2. Plaintiff was employed at IDOT in District 8 (D-8) as an Engineering Technician I between October 2, 2017 and March 13, 2018. (Doc. 20, ¶ 2; Ex. 3, Varlotta Dep. 21:20-22).

3. When a new employee is hired at IDOT, there is a probationary period before the employee becomes a member of the collective bargaining unit, which is referred to as being a "certified" employee. (Ex. 4, Kauffman Dep. 20:24, 21:1-3).

4. If an employee does not become certified by successfully completing his or probationary period, they are terminated. (Ex. 4, Kauffman Dep. 20:8-11).

5. When Plaintiff was hired at IDOT, his probationary period was 6 months. (Ex. 1, Weary Dep. 30:22-24, 31:1-4, 45:3-5).

6. Plaintiff interviewed for the Engineering Technician I position with Clark Kaericher and a technical advisor. (Ex. 1, Weary Dep. 34:1-19; Ex. 2, Kaericher Dep: 41:1-5).

7. At all relevant times, Kaericher was IDOT's Administrative Service's Manager for District 8. (Doc. 20, ¶ 10; Ex. 2, Kaericher Dep. 116:8-12).

8.  After an interview for a position at IDOT occurs, the application and interview notes are sent to the Human Resources Department at IDOT's central office in Springfield, Illinois which will subsequently send the district office a list of selected candidates with a starting salary. (Ex. 2, Kaericher Dep: 46:2-9).

9.  One or two months after Plaintiff's interview, Kaericher called him and offered him the position of Engineering Technician I at a pay rate of $2,640.00 per month (Ex. 1, Weary Dep. 35:3).

10. Kaericher was not involved with the calculation of Plaintiff's offered salary as it was outside the scope of his job duties. (Ex. 2, Kaericher Dep. 55:19-24, 56:1-2, 57:23-24).

11. Plaintiff complained to Kaericher and IDOT employee Shelley Loring that the starting pay did not seem fair given his degree and experience. (Ex. 1, Weary Dep. 35:3-7, 38:24; Ex. 4 Kaufmann Dep. 67:1-4).

12. Plaintiff did not mention his race or age when he complained about the starting salary. (Ex. 2, Kaericher Dep. 115:14-17).

13. Kaericher and Loring both told Plaintiff that District 8 did not set the salary and that salaries were set by Springfield, which he presumed to mean IDOT's personnel department. (Ex. 1, Weary Dep. 36:12-13, 43:7-8, 44:3-7).

14. Kaericher advised Plaintiff that he had a grievance process through his union to dispute the salary. (Ex. 2, Kaericher Dep. 178:8-17).

15. Plaintiff believed Kaericher was repulsed that an older African-American would question a younger Caucasian superior because when he questioned Kaericher about the pay rate, Kaericher's tone changed and he seemed upset and snide so Plaintiff "picked up there was some racial animus behind it." (Ex. 1, Weary Dep. 56:19-24, 57:1-5).

16. When asked what evidence he has that he was offered a lower starting salary because of his race during his discovery deposition, Plaintiff testified Kaericher is a member of the Freemasons Scottish Rite, an organization that according to Plaintiff does not allow membership to African-Americans. (Ex. 1, Weary Dep. 58:6-24, 59:1-3).

17. Although Kaericher is a member of the Freemason Scottish Rite Valley of Springfield Illinois, which is a chapter of the Scottish Rite Northern Masonic Jurisdiction. This organization does not preclude African-Americans from joining. In fact, the Freemason Scottish Rite currently has African-American members, as it has for several years. CITATION.

18 Plaintiff is not making any claims that anyone at IDOT other than Kaericher discriminated against him based on his race. (Ex. 1, Weary Dep: 63:16-20).

19. During his probationary period, around November 22, 2017, Plaintiff applied for the position of D-8 relocation manager. (Ex. 1, Weary Dep: 64:21-24, 65:1-3).

20. Twelve applicants, including Plaintiff, were offered interviews for the D-8 relocation manager position, and those interviews occurred on February 15 and 16, 2018. (Ex. 1, Weary Dep: 65:11-23).

21. Plaintiff also applied for a property manager position and the interview was set for May 2018, but his employment ended before that interview. (Ex. 1, Weary Dep: 65:14-19).

22. For the D-8 relocation manager position, Plaintiff was interviewed by Kaericher and Pam Johnson. (Ex. 1, Weary Dep: 67:5-15).

23. Kaericher and Johnson conducted *Rutan* interviews for the D-8 relocation manager, wherein they asked each candidate the same questions, took notes for the answers, and then scored the candidates based on their experience relative to the question.. (Ex. 2, Kaericher Dep. 48:15-24, 49:1-17, 52:1-24, 79-84:16-20)

24. Plaintiff was not offered the D-8 relocation manager position, and he believes that was because of political reasons, not because of age or race discrimination. (Ex. 1, Weary Dep: 70:10-21).

25. In Plaintiff's opinion, while the individual's education and experience were appropriate, it was less than his. (Ex. 1, Weary Dep. 74:3-7).

26. On March 2, 2018, Plaintiff sent a letter to the Special Master's office complaining that IDOT violates *Rutan* procedures, and also that accusing Kaericher of bribery and fraud. (Ex. 1, Weary Dep: 72:108; Ex. 5, March 2, 2018 letter).[1]

27. In *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Court held (1) promotions, transfers, and recalls based on political affiliation or support are impermissible infringements on a government employees' First Amendment rights, and (2) basing hiring decisions on political belief and association violates applicants' First Amendment rights absent a vital governmental interest.

28. On November 18, 2014, the Northern District appointed a Special Master to investigate and make recommendations with respect to IDOT's hiring procedures due to "the pervasive misuse by IDOT of a position labeled as exempt—that of Staff Assistant—by hiring people into that position and then having them perform non-exempt work." *Shakman v. Democratic Org. of Cook Cty.*, No. 69 C 2145, 2016 WL 7007507, at *1 (N.D. Ill. Nov. 28, 2016).

29. A Special Master monitored Plaintiff's initial and subsequent interview for his promotion at IDOT. (Ex. 2, Kaericher Dep: 41:1-7, 44:7-15, 102:18-24).

30. Around March 13, 2018, Plaintiff received a statement of charges from IDOT charging him with failing to adhere to the personnel policy manual's standards for disruptive

---

[1] Although the letter is dated, March 2, 2012, 2012 is merely a typo. (*See* Second Amended Complaint, Doc. 20, ¶27 and Ex. 2, Kaericher Dep. 94:2-4)

conduct and courtesy during his probationary period, and he attended a pre-disciplinary meeting on March 14, 2018. (Ex. 1, Weary Dep: 75:5-11, 75:18-22, 76: 5-10; Ex. 6, Statement of Charges, Ex. 7, Pre-Disciplinary Memo).

31. IDOT decided to terminate, or not certify, Plaintiff, a probationary employee, because of disruptive and insubordinate behavior. (Ex. 3, Varlotta Dep. 24:8-10, 26:22-24, 27:1, 31:2-3, 31:15-18, 44:12, 45:1-2; Ex. 4, Kauffman Dep. 50:20-24, 51:1-13, 75:6-7, 75:23-24).

32. On October 4, 2018, six months after his termination, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights, and On October 16, 2018, the EEOC issued a Dismissal and Notice of Rights. (Doc. 20-1).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986). Yet not every conceivable inference must be drawn, only reasonable inferences. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312-13 (7th Cir.1986).

A defendant moving for summary judgment on the grounds that a plaintiff cannot prove an essential element of the case plaintiff must prove at trial, has no burden to support his motion with affidavits or other evidence negating plaintiff's claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-70 (7th Cir. 2013). Instead, a defendant may simply point out the absence of evidence to support

the claim plaintiff bears the burden of proving at trial. *Id*., at 1168. The Seventh Circuit has found that the United States Supreme Court has "expressly rejected" the argument that a defendant moving for summary judgment bears the burden of producing evidence to negate an element of the plaintiff's case. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994).

To defeat a motion for summary judgment, a plaintiff must show concrete evidence documenting a genuine issue of fact which is material in the sense that it is outcome determinative. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2007). A plaintiff must show not only there is a factual dispute, but also that there is sufficient evidence to enable a jury to render a verdict in plaintiff's favor. *Anderson*, 477 U.S. at 249. "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors . . . ." *Rand v. CF Industries, Inc.,* 42 F.3d 1139, 1146 (7th Cir. 1994).

## ARGUMENT

**I. Plaintiff has failed to establish IDOT discriminated or retaliated against him based upon his race in setting his salary, failing to promote and terminating him.**

The Court should enter summary judgment in favor of Defendant IDOT on Count I because Plaintiff has failed to establish IDOT discriminated or retaliated against him based upon his race in setting his salary, failing to promote him and terminating his employment. Title VII prohibits an employer from discriminating against an employee based on his race. 42 U.S.C. § 2000e-2(a). To sustain a claim for race discrimination, a plaintiff must show that he: (1) is member of a protected class, (2) performed his job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated employee outside of that protected class. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 604-05 (7th Cir. 2014). "Adverse employment actions . . . generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes

in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011).

In *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the Seventh Circuit emphasized the correct standard in employment discrimination cases is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action." The Seventh Circuit indicated the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), may still be used in the discrimination analysis. *Ortiz*, 834 F.3d at 766. Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of setting forth a *prima facie* case of discrimination by establishing that he is a member of a protected class, that his job performance met the employer's legitimate expectations, he suffered an adverse employment action, and that similarly situated employees outside of the protected class received more favorable treatment. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018). If the plaintiff satisfies this burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* At that point, the burden shifts back to the plaintiff to show that the employer's explanation is pretextual. *Id.* The ultimate burden of persuasion, however, "remains at all times with the plaintiff." *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Here, Plaintiff has not made a *prima facie* case of race discrimination in the setting of his salary. He has presented no proof that he suffered an adverse employment action in the setting of his starting salary due to his race. Nor has he presented any evidence that other similarly situated employees outside of the protected class received a higher starting salary. In fact, he testified that he is not making any claims that anyone at IDOT other than Kaericher discriminated against him

based on his race. (Undisputed Material Fact ("UMF") ¶ 17, Ex. 1, Weary Dep: 63:16-20). However, he has presented no evidence to refute Kaericher's testimony that he was not involved with the calculation of Plaintiff's salary as it was outside the scope of his job duties. (UMF ¶ 10, Ex. 2, Kaericher Dep. 55:19-24, 56:1-2, 57:23-24).

Although Plaintiff stated that Kaericher's tone changed when he asked about the offered pay rate, (UMF ¶ 16, Ex. 1, Weary Dep. 56:19-24, 57:1-5), this does not reasonably suggest that, even if he was involved in setting Plaintiff's salary, any action by Kaericher was motivated by Plaintiff's race. Plaintiff's only reason for believing that the tone change was based on race is his own belief. (UMF ¶ 16, Ex. 1, Weary Dep. 56:19-24, 57:1-5). Evidence of discrimination "must point directly to the conclusion that an employer was illegally motivated, without reliance on speculation." *Simpson v. Beaver Dam Cmty Hosps., Inc.*, 780 F.3d 784, 791-794 (7th Cir. 2015) (plaintiff's subjective beliefs that employer's reasons for not hiring him were based on race, including that he was a "bad actor," was not on his "best behavior," and would be a "better fit" elsewhere, was speculative and insufficient to defeat summary judgment) (internal quotation marks omitted). Plaintiff relies solely on his own subjective beliefs to assert that Kaericher's tone changed because an African-America challenged him regarding the pay rate, which is insufficient to establish that the tone change was because of Plaintiff's race.

Plaintiff also fails to present any evidence that the decision not to promote him to the D-8 relocation manager was based on his race. To prevail on his failure to promote race discrimination claim under *McDonnell Douglas*, Plaintiff must show: (1) he belonged to a protected class; (2) he applied and was qualified for the position sought; (3) the employer rejected him for that position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position sought. *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016); *Adams v. City of*

*Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014) (citations omitted). If Plaintiff makes such a showing, the burden then shifts to IDOT to set forth evidence supporting a finding that the decision not to promote was non-discriminatory. *Adams*, 742 F.3d at 735. If it presents a legitimate, non-discriminatory basis for not promoting Plaintiff, the burden shifts back to Plaintiff to show its explanation is pretextual. *Id.*

Here, Plaintiff admitted that he believes the decision to hire someone else for the D-8 relocation manager position was for political reasons, *not because of race discrimination*. (UMF ¶ 23, Ex. 1, Weary Dep: 70:10-21). Further, he cannot establish the fourth element of a *prima facie* case because he offers insufficient evidence that the individual hired was not better qualified for the D-8 relocation manager position. Instead, he merely testified that in his opinion while the individual's education and experience where appropriate, it was less than his. (UMF ¶ 24, Ex. 1, Weary Dep. 74:3-7). A litigant's assertion of his own superior qualifications can only be considered evidence of unlawful decision-making if it is "so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)); *see also Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (plaintiff's conclusory statements about her job ability are insufficient to contradict an employer's negative assessment of that ability and do not create a question of fact).

With respect to the decision not to certify Plaintiff for employment with IDOT beyond his probationary period, even assuming *arguendo* Plaintiff could establish a *prima facie* case of race discrimination, IDOT has articulated a legitimate, nondiscriminatory reason for terminating his employment and Plaintiff has no evidence that this explanation is pretextual. IDOT terminated

Plaintiff because he failed to adhere to the personnel policy manual's standards for disruptive conduct and courtesy during his probationary employment. (UMF ¶¶ 20-31, Ex. 6, Statement of Charges; Ex. 3, Varlotta Dep. 24:8-10, 26:22-24).

Plaintiff presents no evidence that the proffered explanation was pretextual. To establish pretext, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [IDOT] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). "Pretext is shown by the plaintiff asserting evidence that '(1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 439 (7th Cir. 2014) (citing *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010)). Pretext does not mean simply a mistake, but instead a lie, "specifically a phony reason for some action." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015); *see Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (to avoid summary judgment, plaintiff must demonstrate that the employer's proffered reason is a lie or completely lacks a factual basis).

Moreover, there is no evidence to support Plaintiff's claim that IDOT retaliated against him for reporting racial discrimination. Title VII prohibits employers from retaliation against employees for complaining about discrimination. 42 U.S.C. § 2000e-3(a). "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, (2006). "To establish a *prima facie* case of retaliation under Title VII, [a plaintiff] must show: (1) he

engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, and (3) there is a causal link between the protected activity and the adverse action." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019).

In this case, Plaintiff fails to present any evidence that he engaged in a statutorily protected activity and that IDOT took an adverse action against him because of it. Specifically, there is no indication that he reported or complained of racial discrimination prior to not being certified. By his own admission he complained to Kaericher and Shelley Loring that the starting salary he was offered did not seem fair given his degree and experience. (UMF ¶ 11, Ex. 1, Weary Dep. 35:3-7, 38:24). But he did not bring up his race or age when he complained about the starting salary. (UFM ¶ 12, Ex. 2, Kaericher Dep. 115:14-17). On March 2, 2018, Plaintiff sent a letter to the Special Master's office complaining that IDOT violates *Rutan* procedures. (UMF ¶ 26, Ex. 1, Weary Dep: 72:108; Ex. 5, March 2, 2018 letter). Although he accused IDOT of violating *Rutan* and made several allegations against Kaericher, he made no complaints of racial discrimination against IDOT, or Kaericher, in his letter. (UFM ¶ 26, Ex. 5, March 2, 2018 letter).

Thus, for these reasons, the Court should grant summary judgment in favor of IDOT on Count I of the Second Amended Complaint.

**II.    Plaintiff has failed to show IDOT discriminated against him based on his age or retaliated against him for reporting age discrimination by paying him a low salary, failing to promote and terminating him.**

The Court should enter summary judgment in favor of Defendant IDOT on Count II because Plaintiff has failed to show IDOT discriminated based on his age or retaliated against him for reporting age discrimination by paying him a discriminatorily suppressed salary, failing to promote him and terminating his employment. The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate

against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In other words, Plaintiff must prove his age was the "but-for" cause of some adverse employment action—i.e., the decision to pay him a suppressed salary, failing to promote him, and terminating his employment. *Id.* at 177–78.

To defeat Defendant's motion for summary judgment, Plaintiff may produce either director or indirect evidence of age-based discrimination. *Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 865 (7th Cir. 2016). The now-familiar test articulated by the Seventh Circuit in *Ortiz*, 834 F.3d at 765 ("whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action,") is also used in age discrimination cases. *McDaniel v. Progress Rail Locomotive Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The critical inquiry is whether the plaintiff has adduced evidence that would allow a reasonable jury to find his age was the but-for cause of an adverse employment action. In this case, the answer to this question is clearly no. *Id*.

Plaintiff has not presented any evidence that, because of his age, IDOT paid him a reduced salary, did not promote him to D-8 relocation manager, and terminated him. Likewise, he has presented no evidence that IDOT retaliated against him for reporting age discrimination. In fact, at no time did Plaintiff report any type of age discrimination prior to being terminated. As discussed above, when Plaintiff initially complained about his starting salary, he complained that it did not seem fair given his degree and experience. (UMF ¶ 11, Ex. 1, Weary Dep. 35:3-7, 38:24). He did not bring up his age when he complained about the starting salary. (UMF ¶ 12, Ex. 2, Kaericher Dep. 115:14-17). In fact, he concedes that his age *did not play a role* in him failing to

get the D-8 relocation manager position, attributing that to political patronage. (UMF ¶ 23, Ex. 1, Weary Dep: 70:10-21). In short, Plaintiff has not presented any evidence that his age was a factor, much less that it was the "but-for" cause, in the calculation of his starting salary, failure to promote him, or decision not to certify him as a collective bargaining employee at the end of his probationary period.

Thus, for these reasons, the Court should grant summary judgment in favor of Defendant IDOT on Count II of the Second Amended Complaint.

### III. Plaintiff has not presented sufficient evidence that Kaericher violated the Equal Protection Clause due to Plaintiff's age, race or color, and/or or protective activity by paying him a low salary, failing to promote, and terminating him.

The Court should enter summary judgment in favor of Defendant Kaericher on Count III because Plaintiff has not presented sufficient evidence that Kaericher deprived him of his rights under the Equal Protection Clause due to his age, race or color, and/or or protective activity by paying him a discriminatorily suppressed salary, failing to promote him, and terminating his employment. Plaintiff has not produced sufficient evidence that Defendant Kaericher deprived him of his rights under Equal Protection Clause due to his age, race, color, or protected activity by paying him a discriminatorily suppressed salary, failing to promote him, and terminating his employment.

"The Fourteen Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class . . . including acts of employment discrimination." *Trigg v. Fort Wayne Cty. Schs.,* 766 F.2d 299, 300 (7th Cir.1985). The same standards for proving intentional discrimination that apply to Title VII apply to Section 1983 equal protection claims. *Radentz v. Marion Cty*. 640 F.3d 754, 757 (7th Cir. 2011). "To establish the basic prima facie case of an equal protection violation, [Plaintiff] must demonstrate that (1) he is a member of a protected

class, (2) he is similarly situated to members of the unprotected class, (3) he suffered an adverse employment action, and (4) he was treated differently from members of the protected class." *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). "Once that prima facie case is met, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the action alleged to be discriminatory." *Radentz*, 640 F.3d at 757. If the employer meets this burden of production, a plaintiff "must establish by a preponderance of the evidence that the proffered reasons for the alleged discriminatory action are pretextual." *Id.*

Here, Plaintiff has not shown he was treated differently from members of the unprotected class, and therefore, he cannot establish a *prima facie* case of discrimination in violation of the Equal Protection Clause. Even assuming that he has shown a prima facie case, there is no evidence that Kaericher set Plaintiff's starting salary. At all relevant times, Kaericher was IDOT's District 8's Administrative Service's Manager. (UMF ¶ 7, Doc. 20, ¶ 10; Ex. 2, Kaericher Dep. 116:8-12). Kaericher and a technical advisor interviewed Plaintiff for the position he was hired for in October 2017. (UMF ¶ 6, Ex. 1, Weary Dep. 34:1-19; Ex. 2, Kaericher Dep: 41:1-5). After an interview for a position at IDOT, the application and interview notes are sent to the Human Resources Department at IDOT's central office in Springfield, which will then send the district office a list of selected candidates *with a starting salary*. (UMF ¶ 8, Ex. 2, Kaericher Dep: 46:2-9).

A couple months after Plaintiff's interview, Kaericher called and offered him the job at a rate of $2,640.00 per month (UMF ¶ 9, Ex. 1, Weary Dep. 35:3). Kaericher was not involved with the calculation of Plaintiff's salary because calculating starting salaries outside the scope of his job duties. (UMF ¶ 10, Ex. 2, Kaericher Dep. 55:19-24, 56:1-2, 57:23-24). Plaintiff has produced no evidence the Kaericher had any role in calculating his starting salary. Kaericher advised Plaintiff that he had the option of challenging the salary in a grievance process through his union.

(UMF ¶ 14, Ex. 2, Kaericher Dep. 178:8-17). Plaintiff offers no evidence of age discrimination by Kaericher to suggest any of his employment decisions regarding Plaintiff were pretextual.

The only suggestion by Plaintiff of racial discrimination on Kaericher's part is Plaintiff's claim that when he questioned Kaericher about the pay rate, Kaericher's tone changed and he seemed upset and snide so he "picked up there was some racial animus behind it." (UMF ¶ 15, Ex. 1, Weary Dep. 56:19-24, 57:1-5). As stated above, Plaintiff's speculation that the tone change was based on racial animus is insufficient to create a genuine dispute of a material fact, and he provides no evidence that Kaericher took any action because of Plaintiff's age. When asked what evidence he has that he was offered a lower starting salary because of his race during his discovery deposition, Plaintiff testified Kaericher is a member of the Freemasons Scottish Rite, an organization that Plaintiff speculates does not allow membership to African-Americans. (UFM 16, Ex. 1, Weary Dep. 58:6-24, 59:1-3). However, he has offered no independent evidence other than his subjective belief that the Freemasons Scottish Rite is a racist or discriminatory organization which does not allow African-Americans to join, let alone that Kaericher discriminated against him because of race. In fact, the Freemasons Scottish Rite currently has African-American members, as it has for many years. CITATION. Plaintiff fails to present any evidence, direct or indirect, that Kaericher even participated in setting Plaintiff's salary, but even if he did, Plaintiff fails to present any evidence that Kaericher somehow discriminated against him due to his race or age.

Again, with respect to the failure to receive the promotion of D-8 relocation manager, Plaintiff admits that he believes that was due to political patronage, not because of his race or age. (UMF ¶ 23, Ex. 1, Weary Dep: 70:10-21). Further, as discussed above, Plaintiff has not produced any evidence that the applicant who received the position was less qualified other than his own

belief that he was more qualified. "[G]enerally, '[a]n employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability.'" *Williams v. Seniff*, 342 F.3d 774, 789 (7th Cir. 2003) (quoting G*ustovich v. AT&T Commc'ns, Inc.,* 972 F. 2d 845, 848 (7th Cir.1992)).

Finally, Plaintiff has not presented sufficient evidence to support a conclusion that Kaericher played a role in the decision to terminate him due to his age or race. Plaintiff was terminated for failing to adhere to the personnel policy manual's standards for disruptive conduct and courtesy during his probationary period. (UMF ¶ 31, Ex. 1, Weary Dep: 75:5-11, 75:18-22, 76: 5-10; Ex. 3, Varlotta Dep. 24:8-10, 26:22-24, 27:1, 31:2-3, 31:15-18, 44:12, 45:1-2; Ex. 6, Statement of Charges). Plaintiff presents no evidence to suggest this was pretextual justification and that he was instead terminated because of his age or race.

Thus, for these reasons, the Court should enter summary judgment in favor of Defendant Kaericher on Count III.

**IV. This Court should grant summary judgment in favor of Defendant Kaericher because he is entitled to qualified immunity.**

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine whether state actors are entitled to qualified immunity, courts consider "(1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants

violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin,* 578 F.3d 526, 540 (7th Cir.2009) *citing Pearson v. Callahan,* 555 U.S. 223, 232 (2009). "Qualified immunity is meant to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Est. of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021), quoting *Mullenix v. Luna*, 577 U.S. 7, 8 (2015). "Once a government official invokes qualified immunity in a section 1983 suit, the burden shifts to the plaintiff to defeat the defense by showing (1) that a trier of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the conduct was clearly established at the time the officer acted." *Ortiz*, 987 F.3d at 638-639. If Plaintiff cannot do so, the Court must grant the Defendant's motion for summary judgment. *Id. at 639.*

In this case, the facts, even when taken in a light most favorable to Plaintiff, do not show Kaericher violated a constitutional right, as discussed above in Argument III. While Plaintiff complains his starting salary was discriminatory, Kaericher had nothing to do with the calculation of Plaintiff's starting salary. (UMF ¶ 12, Ex. 2, Kaericher Dep. 55:19-24, 56:1-2, 57:23-24). Nor has Plaintiff offered sufficient evidence which would allow an inference that his starting salary was based on his age or race. With respect to the promotion to D-8 relocation manager, while Kaericher interviewed Plaintiff for that position, with a special master present, Plaintiff offers no evidence to suggest he did not receive that job due to his age or race. (UMF 22, Ex. 2, Kaericher Dep. 48:15-24, 49:1-17, 52:1-24, 79-84:16-20) Instead, he attributes his failure to receive that position to political patronage. (UMF ¶ 23, Ex. 1, Weary Dep: 70:10-21). Finally, as discussed above, IDOT's decision to not certify Plaintiff was based on his disruptive and discourteous conduct. (UMF ¶ 31, Ex. 3, Varlotta Dep. 24:8-10, 26:22-24, 27:1, 31:2-3, 31:15-18, 44:12, 45:1-2; Ex. 4, Kauffman Dep. 50:20-24, 51:1-13, 75:6-7, 75:23-24). Plaintiff has offered no evidence

to suggest Kaericher played a role in Plaintiff's termination due to his age or race or to suggest the proffered reason was pretextual for racial or age discrimination.

For these reasons, Kaericher is entitled to qualified immunity.

## CONCLUSION

Plaintiff has not presented sufficient evidence that his starting salary, failure to obtain the promotion, or termination were based on his age or race. Therefore, summary judgment must be granted in Defendants' favor.

Respectfully submitted,

ILLINOIS DEPARTMENT OF
TRANSPORTATION and CLARK KAERICHER,

Defendants,

KWAME RAOUL, Attorney General
State of Illinois,

Attorney for Defendants,

Thomas R. Ewick, #6279084
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-2077 Phone
(217) 524-5091 Fax
Email: Thomas.Ewick@illinois.gov
    GenLawSpringfield@gmail.com

By: /s/ Thomas R. Ewick
    Thomas R. Ewick, #6279084
    Assistant Attorney General

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS
# EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| DEWITT WEARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-CV-0038-RJD |
| | ) | |
| STATE OF ILLINOIS, DEPARTMENT | ) | |
| OF TRANSPORTATION and CLARK | ) | |
| KAERICHER, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2021 the foregoing document, *Defendants' Memorandum of Law in Support of Motion for Summary Judgment*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Cody Reinberg          creinberg@hkm.com

and I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant:

NONE

Respectfully submitted,

s/ Thomas R. Ewick
Thomas R. Ewick, #6279084
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
(217) 782-2077 Phone
(217) 782-8767 Fax
Email: Thomas.Ewick@illinois.gov
          GenLawSpringfield@gmail.com